IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYMOND GERARD FRANK | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MONTGOMERY COUNTY d/b/a | : | |
| MONTGOMERY COUNTY | : | |
| CORRECTIONAL FACILITY, ET AL. | : | NO. 21-827 |

**MEMORANDUM**

Padova, J.                                                                                    **March 20, 2023**

Plaintiff Raymond Frank commenced this action under 42 U.S.C. § 1983 and state law following his July 6, 2019 arrest in Philadelphia County and subsequent detention in both Montgomery County and Philadelphia, which ended with his hospitalization for a heart attack. There are two pending Motions to Dismiss the First Amended Complaint, one filed by Defendant City of Philadelphia (the "City"), and one filed by Defendants Montgomery County d/b/a Montgomery County Correctional Facility and Warden Sean McGee. In response to the two Motions, Plaintiff withdrew a number of claims,[1] so that the only remaining issue to be resolved is whether Plaintiff has stated cognizable claims against the City and Montgomery County pursuant to <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978). For the following reasons, we conclude that he has not and therefore, dismiss those claims.

I.      **BACKGROUND**

The First Amended Complaint (the "Complaint") alleges that on July 6, 2019, Plaintiff was changing a flat tire in Philadelphia when Philadelphia police arrested him on a detaining warrant

---

[1] Specifically, Plaintiff withdrew all of his claims against Defendant McGee, his negligence claim against Defendant Montgomery County, and his claim for punitive damages against Montgomery County. (Pl.'s Omnibus Resp. at 15 of 16.) Accordingly, we dismiss Montgomery County's Motion as moot to the extent that it seeks dismissal of those claims.

for auto crimes concerning both him and his vehicle.  (Compl. ¶ 15.)  At the time of his arrest, Plaintiff had a pending criminal matter in Montgomery County and had been released on his own recognizance ("ROR bail").  (Id.)

Following his arrest in Philadelphia, Plaintiff was examined by a doctor, who determined that he was not medically fit for incarceration because his blood pressure was 280/160, more than twice the normal level.  (Id. ¶ 16.)  Plaintiff was taken in handcuffs to Pennsylvania Hospital in Philadelphia, where he remained for twelve hours.  (Id. ¶ 17.)  At the hospital, Plaintiff informed the staff that he was awaiting corrective heart surgery and was on various medications for diabetes, congestive heart failure, hyper-tension and/or dyslipidemia.  (Id. ¶¶ 14, 17.)  Upon release from the hospital, Plaintiff was returned to Philadelphia police headquarters, where he was again examined by a doctor, who then cleared him for arrest.  (Id. ¶ 19.)

Plaintiff was arraigned in Philadelphia on July 7, 2019 and given ROR bail.  (Id. ¶ 21.) However, because he was already out on ROR bail in Montgomery County and had been arrested in Philadelphia, his Montgomery County bail had been revoked and he was transferred back to Montgomery County on July 8, 2019, to address the bail violation.  (Id. ¶¶ 22-23.)  The next day, Plaintiff's Montgomery County bail was reinstated in the amount of $5,000.00.  (Id. ¶ 24.)  On July 10, 2019, Plaintiff's cousin paid his new bail and went to Montgomery County Correctional Facility ("MCCF") to pick up Plaintiff.  (Id. ¶ 25.)

However, instead of being released, Plaintiff was informed that he was being transferred back to Philadelphia because he was being charged with two more counts based on the same conduct for which Philadelphia had already charged him.  (Id. ¶ 26.)  Philadelphia detectives informed Plaintiff that he "was only temporarily in their custody for twenty-four hours as the warrant for arrest was already satisfied and removed and they would then return him to

Montgomery County Prison for release."   (<u>Id.</u> ¶ 27.)   As a result, Plaintiff was taken back to Philadelphia and processed; he appeared for a video arraignment on two new charges; and "the bail was reset as a[n] ROR bail encompassing all of the charges alleged."   (<u>Id.</u>)

Plaintiff was returned to Montgomery County the next day, expecting to be released, but he was not.   (<u>Id.</u> ¶ 28-29.)   The reception guard at MCCF advised Plaintiff that he would not be released because "there appeared to be an issue of bail on his Philadelphia charges."   (<u>Id.</u> ¶ 29.) According to the Complaint, this bail issue arose because the Philadelphia police failed to send his bail paperwork to MCCF.   (<u>Id.</u>)   Plaintiff was taken to the hospital wing at MCCF to await clarification on the Philadelphia matter.   (<u>Id.</u> ¶ 30.)   Plaintiff remained in custody at MCCF through the weekend.   (<u>Id.</u> ¶ 32.)   At this point, he had gone "several days" without his "life sustaining prescription medication," and yet his repeated requests to see a doctor or nurse were denied.   (<u>Id.</u> ¶ 31.)

On July 15, 2019, after nine days without his medication, Plaintiff felt "extremely ill."   (<u>Id.</u> ¶ 33.)   He told the MCCF guards that something was wrong and that he needed to see a doctor or nurse immediately.   (<u>Id.</u>)   For hours, Plaintiff had chest pains and was gasping for air, but his pleas for medical attention were ignored.   (<u>Id.</u>)   At 5:15 p.m., when the staff shift change was about to occur, the touring correctional officers and nurses noticed Plaintiff's appearance, and the nurse asked Plaintiff if he was o.k. because he did not look well.   (<u>Id.</u> ¶ 34.)   Plaintiff told the nurse that he had chest pains and felt as if he was having a heart attack.   (<u>Id.</u>)   He also told the nurse that he had been asking for medical assistance for hours and had been ignored.   (<u>Id.</u>) Plaintiff was then escorted to the examination room where he was given two aspirin and told that someone would check on him again in about an hour.   (<u>Id.</u> ¶ 35.)   Within twenty minutes, another nurse found Plaintiff writhing in pain.   (<u>Id.</u>)   She performed an EKG and determined that Plaintiff

was having a heart attack.   (Id.)   Plaintiff was then transported to the emergency room at Einstein Medical Center.   (Id.)

On the way to the hospital, Plaintiff lost consciousness and the paramedics had to perform CPR and shock his heart.   (Id. ¶ 36.)   Plaintiff was admitted to the hospital, where he underwent an emergency catheterization and angioplasty, and two arterial stents were put in place.   (Id. ¶ 37.)   In the ICU, Plaintiff was handcuffed to the bed and was outfitted with ankle shackles.   (Id.) One of the stents was directed through the artery on Plaintiff's lower right arm in the wrist area, and Plaintiff's handcuffs sat over the open entryway to his artery.   (Id. ¶ 38.)   This configuration caused a staph infection and Plaintiff had to be treated for blood poisoning.   (Id.)

On July 18, 2019, Plaintiff remained under restraint in the hospital, under the supervision of attending guards.   (Id. ¶ 43.)   At 2:00 p.m., a senior staff member of MCCF and another senior guard came to the hospital with Plaintiff's personal belongings and clothes.   (Id.)   The senior staff member told the other guards to pack up and said that Plaintiff had been detained by mistake. (Id.)   He then apologized to Plaintiff for any inconvenience and told him that the prison was no longer paying the hospital bill, so that Plaintiff was responsible for all payments from that point on.   (Id. ¶ 44.)   All the guards then left the hospital.   (Id.)   Plaintiff was released from the hospital the next day, July 19, 2019.   (Id. ¶ 46.)

Plaintiff commenced this action with the assistance of counsel in February of 2021, and he filed the Complaint in March of 2021.   The Complaint contains three municipal liability counts against the City and Montgomery County pursuant to Monell: Counts II, IV, and V.   Specifically, Count II asserts a claim pursuant to Monell based on wrongful imprisonment and freedom from prolonged incarceration, arising out of "Defendants' failure to appropriately process and/or communicate the information and documentation that Plaintiff . . . was to be released on bail and/or

his own recognizance."   (Id. ¶ 56.)   Count IV asserts a <u>Monell</u> claim based on Defendants' alleged failure to provide adequate medical care and treatment.   Count V asserts a <u>Monell</u> claim based on excessive force allegedly used when Plaintiff was handcuffed at the hospital.

After the two pending Motions to Dismiss were filed, Plaintiff's counsel filed an omnibus response to the Motions and later moved to withdraw their appearances on Plaintiff's behalf.   The motion to withdraw was granted and, in March of 2022, the case was placed in suspense while Plaintiff determined whether to obtain new counsel or proceed pro se.   Plaintiff has since requested a number of extensions of time, but no new counsel has entered an appearance.   We therefore proceed to decide the two pending Motions, which were fully briefed by Plaintiff's prior counsel.

## II.   LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputely authentic documents if the complainant's claims are based upon [those] documents." <u>Alpizar-Fallas v. Favero</u>, 908 F.3d 910, 914 (3d Cir. 2018) (quoting <u>Mayer v. Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010)).   "We accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."   <u>Shorter v. United States</u>, 12 F.4th 366, 371 (3d Cir. 2021) (citing <u>Warren Gen. Hosp. v. Amgen Inc.</u>, 643 F.3d 77, 84 (3d Cir. 2011)).   However, we "are not bound to accept as true a legal conclusion couched as a factual allegation."   <u>Wood v. Moss</u>, 572 U.S. 744, 755 n.5 (2014) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests."   <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (first quoting Fed. R. Civ. P.

8(a)(2); then quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957) (second alteration in original)).

The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,'

thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the]

misconduct alleged.'"   <u>Warren Gen. Hosp.</u>, 643 F.3d at 84 (quoting <u>Fowler v. UPMC Shadyside</u>,

578 F.3d 203, 210 (3d Cir. 2009)).   "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

<u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).   In the end, we will grant a motion to

dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not

sufficient "to raise a right to relief above the speculative level."   <u>Geness v. Admin. Off. of Pa.</u>

<u>Cts.</u>, 974 F.3d 263, 269 (3d Cir. 2020) (quoting <u>Twombly</u>, 550 U.S. at 555).

## III.   DISCUSSION

Defendants argue in their Motions that Plaintiff's <u>Monell</u> claims should be dismissed for

failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).   "To state a

claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and

laws of the United States, and must show that the alleged deprivation was committed by a person

acting under color of state law."   <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (citations omitted).   A

municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or

agents."   <u>Monell</u>, 436 U.S. at 694.   Instead, to assert a § 1983 claim against a municipality, i.e.,

a <u>Monell</u> claim, a plaintiff must allege that his constitutional deprivations were caused by an

official policy or custom of the municipality or the municipality's failure to properly train its

employees.   <u>Id.</u>; <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 403 (1997); <u>City</u>

<u>of Canton v. Harris</u>, 489 U.S. 378, 388-89 (1989); <u>Reitz v. Cnty. of Bucks</u>, 125 F.3d 139, 145 (3d

Cir. 1997).

Where a <u>Monell</u> claim is based on a policy or custom, the plaintiff must plead sufficient facts to show that a policy or custom exists and that it proximately caused the plaintiff's constitutional deprivation.   <u>Est. of Roman v. City of Newark</u>, 914 F.3d 789, 798 (3d Cir. 2019). A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers."   <u>Simmons v. City of Philadelphia</u>, 947 F.2d 1042, 1059 (3d Cir. 1991) (alteration in original) (quoting <u>Monell</u>, 436 U.S. at 690).   "A custom is an act 'that has not been formally approved by an appropriate decision-maker,' but that is 'so widespread as to have the force of law.'" <u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003) (quoting <u>Bryan Cnty.</u>, 520 U.S. at 404); <u>see also</u> <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 215 (3d Cir. 2001) ("A custom . . . must have the force of law by virtue of the persistent practices of state [or municipal] officials." (internal quotation omitted)).

The Third Circuit has stated that "[t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works."   <u>Natale</u>, 318 F.3d at 584.   The first situation is that in which "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."   <u>Id.</u> (quotation omitted) The second situation is that in which "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."   <u>Id.</u> (quotation omitted).   The third situation is that in which "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"   <u>Id.</u> (alteration in original) (quoting <u>City of Canton</u>, 489 U.S. at 390) (citation omitted).   To plead deliberate indifference that

proximately caused a plaintiff's injury, the plaintiff must allege that the municipality "had knowledge of 'similar unlawful conduct in the past, . . . failed to take precautions against future violations, and that [its] failure, at least in part, led to [his] injury.'"   Est. of Roman, 914 F.3d at 798 (quoting Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990)).

Plaintiff maintains that he has adequately stated Monell claims against both the City and Montgomery County based on the third of the three potential approaches.   He argues that "the crux of this case" is that "Plaintiff went nine days without his life-saving medication while in Defendants' custody," "Defendants *knew* Plaintiff needed medication but failed to act," and, as a result, Plaintiff had a heart attack.   (Pl.'s Omnibus Resp. at 14 of 16.)   He further argues that, reading the Complaint as a whole, he "has alleged sufficient facts from which the Court can reasonably infer that Defendants have an ongoing and widespread pattern of pervasive indifference to prisoner's medical care – known throughout all levels of the organization, such that Plaintiff has stated a claim for a custom of unconstitutional conduct."   (Id.)   He makes no argument about the Monell claims in Counts II and V based on wrongful imprisonment and excessive force.

Contrary to Plaintiff's assertion that he has alleged sufficient facts to raise an inference that there was a custom in both Philadelphia and Montgomery County of deliberate indifference to prisoners' medical needs, the Complaint contains no allegations of fact regarding the medical care provided to prisoners other than himself and thus, provides us absolutely no basis on which to infer any ongoing and widespread indifference to the medical care of prisoners.   Rather, the Complaint only baldly alleges that the failure to provide Plaintiff with his heart medication "was due to [Defendants'] failure to appropriately train and supervise [their] staff and/or to appropriately discipline [their] staff when [they] caused similar Constitutional violations in the past."   (Compl. ¶ 67.)   It does not allege a single fact regarding the alleged "similar Constitutional violations in

the past," and simply alleges, based "[upon] information and belief," that "discovery will reveal Defendants have caused similar Constitutional violations to other citizens prior to Plaintiff."   (Id. ¶¶ 67-68.)

A plaintiff may plead allegations based upon information and belief, but only if he does not rely on "*boilerplate and conclusory allegations*" and he "*accompan[ies] [his] legal theory with factual allegations that make [his] theoretically viable claim plausible*."   McDermott v. Clondalkin Group, Inc., 649 F. App'x 263, 267-68 (3d Cir. 2016) (quoting In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002)).   The Third Circuit has "recognize[d] that plaintiffs may face challenges in drafting claims [due to] an information asymmetry between plaintiffs and defendants."   Santiago v. Warminster Twp., 629 F.3d 121, 134 n.10 (3d Cir. 2010). It has therefore observed that "reasonable minds may take issue with Iqbal and urge a different balance between ensuring, on the one hand, access to the courts so that victims are able to obtain recompense and, on the other, ensuring that municipalities . . . are not unnecessarily subjected to the burdens of litigation."   Id.   However, it has ultimately instructed that "[t]he Supreme Court has struck [that] balance, . . . and we [must] abide by it."   Id.; see also id. at 134 (quoting Twombly, 550 U.S. at 557 (requiring sufficient factual enhancement to support a conclusion that an entitlement to relief is not just possible, but is plausible)).

Applying the operative Rule 12(b)(6) standard here, we can only conclude that, in the absence of any factual allegations regarding "similar Constitutional violations" that could support an inference of deliberate indifference, or any other facts that could support a reasonable inference that Defendants exhibited widespread and pervasive indifference to prisoners' medical needs in either Philadelphia or Montgomery County, the Complaint fails to state any plausible Monell claim

based on inadequate medical care.[2]   See Hagwood, 604 F. Supp. 3d at 308 (finding Monell allegations to be insufficient where "Plaintiff does not allege any facts to support exactly how these policymakers were . . . aware of prior occurrences of violence, what those prior occurrences were, and how they failed to adequately train employees to handle such situations").   We therefore dismiss Count IV against both Defendants on that basis.

As noted above, the Complaint includes two other Monell counts, i.e., Counts II and V, one grounded on Plaintiff's alleged wrongful imprisonment/prolonged incarceration and the other grounded on the alleged use of excessive force against him.   Because Plaintiff has not responded to Defendants' Motions as they pertain to these two Monell claims, we grant the Motions as unopposed to the extent that they seek dismissal of those two Counts.   At the same time, we note that the claims would also fail on the merits as they, like the medical care claim, rely exclusively on generic allegations that "[a]s a result of the Defendants' policies, customs, procedures, and failure train and/or supervise its employees, Defendants caused the violations of Plaintiff's constitutional rights, which is actionable pursuant to Monell," and, in the wrongful imprisonment count, a suggestion that "[u]pon information and belief, discovery will reveal Defendants have caused similar Constitutional violations to other citizens prior to Plaintiff."   (Compl. ¶¶ 57-58, 76.)   Accordingly, even if we did not grant Defendants' Motions as to Count II and V as unopposed, we would dismiss the claims as insufficiently pled.

Plaintiff has requested leave to amend his claims to the extent that we find the pleadings to

---

[2] To the extent that Plaintiff rests his claim on an alleged failure to train or supervise, such a claim also requires allegations of deliberate indifference and, typically, deficient training and supervision "can only amount to the requisite deliberate indifference" where the failure "has caused a pattern of violations."   Hagwood v. City of Philadelphia, 604 F. Supp. 3d 293, 307 (E.D. Pa. 2022) (quoting Kane v. Chester Cnty. Dept. of Children, Youth and Families, 10 F. Supp. 3d 671, 688 (E.D. Pa. 2014)).

be deficient.   In civil rights cases, we must ordinarily provide a plaintiff with leave to amend unless we find that amendment would be futile.   Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245-46 (3d Cir. 2008).   Here, Plaintiff has not suggested any facts that he could plead to save his Monell claims.   Moreover, this is already Plaintiff's second Complaint, and he filed it in response to prior motions that Defendants filed, in which they also argued that the Monell claims were insufficient.   Accordingly, we can only conclude that Plaintiff's Monell claims are futile, and we deny his request for a third opportunity to state viable Monell claims.   See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew, 944 F.3d 478, 483 (3d Cir. 2019) (denying leave to amend as futile where plaintiff has amended before and thus, "has already had two chances to tell his story").

## IV.   CONCLUSION

For the foregoing reasons, we dismiss the Motion to Dismiss of Montgomery County and Sean McGee as moot insofar as it seeks the dismissal of Plaintiff's claims against Defendant McGee, his negligence claim against Montgomery County, and his claim for punitive damages. We grant that same Motion insofar as it seeks dismissal of the Monell claims against Montgomery County.   Likewise, we grant the City of Philadelphia's Motion to Dismiss, which seeks dismissal of the Monell claims against the City.

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.